## Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Rodger D. Smith II
302 351 9205
302 498 6209 Fax
rsmith@mnat.com

November 9, 2009

The Honorable Leonard P. Stark                                  *VIA ELECTRONIC FILING*
United States District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

Re:   *Cisco v. Teles AG*, C.A. Nos. 09-232-SLR & 09-072-SLR

Dear Judge Stark:

Cisco Systems, Inc. ("Cisco") submits this letter in advance of the November 12 conference call.

**1.     Teles Has Refused to Produce Discovery from Its Prosecution Counsel**. Cisco has properly sought discovery from Teles and its prosecuting attorneys concerning the prosecution of the Patents-in-Suit, the ongoing reexamination of two of Patents-in-Suit and the pending continuation of the Patents-in-Suit.[1] The discovery is relevant to claim construction and to inequitable conduct (Judge Robinson recently denied Teles' motion to dismiss those claims). Cisco has outstanding subpoenas to Novak Druce & Quigg LLP, which was served roughly four months ago, and to Christie Parker Hale LLP. The subpoenas seek non-privileged information regarding the prosecution of the Patents-in-Suit and pending continuations, the ongoing reexamination, knowledge of prior art, Teles' alleged disclosure of the reexaminations to the '431 patent examiner and Cisco's inequitable conduct claims generally. Teles, however, has not produced any responsive documents other than the public file histories, continuing to unilaterally withhold documents even after the October 16 Order finding that Cisco had provided sufficient allegations of inequitable conduct. Cisco has attempted to meet and confer to resolve the dispute, narrowing the original subpoena, without success. *See* Ex. B. Although Teles continues to object to the scope of the documents sought, Teles said that it would produce documents subject to its objections by November 6. *See* Ex. A. However, as we submit this letter, no documents have been produced. Teles also agreed to provide a privilege log. *See id.* No privilege log has been provided. The information is needed now because Cisco is taking depositions from Teles this week and next week. Moreover, the information sought is clearly relevant and discoverable. *See Microsoft Corp.*, 357 F.3d at 1350; *Genzyme v. Atrium Med. Corp*, 315 F. Supp. 2d 552, 583 (D. Del. 2004); *Ed Tobergte Assocs. v. Russell Brands, LLC*, 2009 WL 2406257, at *4 n.30 (D. Kan. Aug. 3, 2009) (collecting cases).

---

[1]    Teles has specifically taken issue with this request: "Accordingly, we will not produce documents from pending Teles patent applications...." *See* Ex. A. Federal Circuit law, however, supports production. *Microsoft Corp. v. Multi-Tech Systems, Inc.* 357 F.3d 1340, 1350 (Fed. Cir. 2004).

The Honorable Leonard P. Stark
November 9, 2009
Page 2

### 2. Teles Has Failed to Produce All Information Concerning Teles' Alleged Interview with the '431 Patent Examiner.

One critical issue with respect to Cisco's inequitable conduct allegations concerns an interview with the examiner of the '431 patent that Teles and its counsel allegedly conducted in December 2007. On September 10, 2009, Teles for the first time disclosed that such an interview – which appears nowhere in the PTO records – had allegedly occurred. In support of its assertions that this interview had occurred, and that certain statements had been made by Teles' representatives and by the examiner, Teles prepared and submitted to the Court a Declaration of Jörn Gendner, Teles' former in-house counsel. *See* Ex. C. Attached to that declaration were *a portion* of Mr. Gendner's notes of the interview. *See id.* Teles argues that this portion of Mr. Gendner's notes about the meeting prove that the conversation at the interview somehow exonerates Teles of any inequitable conduct. Cisco, however, has asked for *all* other documents concerning this interview, including the rest of Mr. Gendner's notes and the notes of other persons concerning the interview. Teles has refused, arguing that any other documents concerning this interview to the extent they exist are privileged. Moreover, Teles has not provided a privilege log of the withheld documents. This improper withholding of documents is prejudicing Cisco just as it is scheduled to take Mr. Gendner's deposition this week. Teles' selective production is a classic example of a party improperly using privilege as a shield and a sword.[2] Such a deliberate partial disclosure to create a tactical advantage for itself effects a waiver as to all documents concerning that same subject-matter—at a minimum, all documents concerning the December 2007 interview. *See Varel v. Banc One Capital Partners*, 1997 WL 86457, at *3 (N.D. Tex. Feb. 25, 1997); *Rhone-Poulenc Rorer, Inc. v. Home Indem.*, 1993 WL 106429, at *3 (E.D. Pa. Mar. 30, 1993). Teles' argument that Mr. Gendner's notes contained only "facts" and therefore there was no privilege to waive is belied by the fact that Teles has not produced a single other note from Mr. Gendner's notebook, nor has Cisco received any other attorney notes from that interview or any other examiner interview that Teles held in the course of prosecuting these patents. In any event, it is clear that Teles is not relying on just the facts in the notes, as Mr. Gendner's declaration contains his interpretation of his notes and his "impression" (*see* Ex. C, ¶ 10) of what occurred during the interview. Cisco seeks an opportunity for full discovery of all documents concerning that interview so that it may be able to fairly and properly discover and cross-examine every participants' recollection and interpretation of this important alleged event.

### 3. Teles Requires Translator at Depositions of English Speaking Witnesses.

As noted above, Cisco is now taking depositions of Teles witnesses. Teles has insisted that all depositions of its witnesses proceed in German, because its witnesses are not "native English speakers," even though a number of its witnesses speak fluent English. Apparently, however, Teles expects these witnesses to testify *at trial* in English. Cisco's position is simple: if Teles is requiring a witness be deposed in German, then it should not be able to have that witness testify at trial in English. For Cisco to have to take depositions through a German translator wastes significant time at the depositions. This has already been made clear by what has occurred in the first translated deposition taken today. Teles is effectively cutting in half Cisco's time to complete individual depositions by requiring such translation. This severely prejudices Cisco. Certain of the Teles witnesses speak English fluently, including Teles' CEO, Dr. Schindler, and Teles' former in-house counsel, Mr. Gendner. Dr. Schindler, for example, conducts business in English and has even conducted press conferences on behalf of Teles in English. Requiring his deposition to proceed in German appears to be designed to reduce the amount of actual deposition time available to Cisco. Likewise, Mr. Gendner appears to speak English. In fact, the notes that form the basis for part of his testimony are mostly in English, and were taken at a

---

[2] At the September 29 hearing, Judge Robinson admonished Teles on this very point. *See* Tr. at 8:6-13.

The Honorable Leonard P. Stark
November 9, 2009
Page 3

meeting conducted in English.[3] Cisco requests that the Court order (1) that the depositions of Teles' English-speaking witness proceed in English with use of a translator only as necessary, or (2) any Teles witnesses who are deposed in German shall be allowed to testify in trial only in German.

    **4.    Teles Failed to Comply With Judge Robinson's Order Re: Infringement Contentions**. During the September 29 hearing, Judge Robinson specifically stated that Teles ought to be able to explain its infringement theory "based on the evidentiary record to date." *See* Tr. at 20:9-13. Teles supplemented its infringement contentions by blindly citing to **nine** documents across **38** asserted claims containing over **90** limitations but providing no explanation as to its basis for infringement. Teles' effort at supplementation is a sham. For nearly every element, Teles continues to mimic the claim language, without providing any detail on how the accused Cisco products perform the features. Most significantly, Teles does not cite a single document for critical aspects of its infringement contentions. For example, Teles cites to no documents to support its assertion that call forwarding or call transfer can infringe claims 2 and 34 of the '902 patent. Nor does Teles cite to a single document to support it's assertion that SAA Probes establish that Cisco's products change from packet switching to circuit switching during call set up and during an existing connection, let alone how SAA Probes accomplish this change. *See* Tr. at 16:9-15; *see, e.g.,* '902 claim 2(b) & (c) (claim language highlighted):

| [2] b) transferring the data packets from the first switch through the packet-switching network to the second switch; | The accused Cisco routers transfer data packets (e.g., an SAA probe or VoIP protocol signaling) from the first switch through the packet switching network (e.g., IP WAN) to the second switch (see e.g., CISCO 00434265 AND CISCO 00230503). <br><br> The access to the packet switching may be provided through, for example, a wired interface or a wireless HWIC module (e.g., HWIC-3G-GSM, HWIC-AP WLAN) within the Cisco router (see e.g., CISCO 00744874). |
|---|---|
| [3] c) checking whether a control signal exists for changing-over from the packet-switching data transfer of the data packets through the packet switching network to a line-switching connection to the second switch, wherein the control signal is produced by the user of an end terminal connection to either said first switch or to said second switch; | The accused Cisco routers check whether a control signal exists for changing-over from a packet-switching data transfer of the data packets through a packet switching network (e.g., IP WAN) to a line-switching connection (e.g. PSTN) to the second switch (see, e.g., CISCO 00434265). <br><br> The control signal is produced by the user when a user presses iDivert, forwards, or transfers a call. |

    **5.    Teles Refused To Provide Designee for Certain 30(b)(6) Topics**. Teles has improperly refused to identify a witness for topics 30, 40 and 60 of Cisco's 30(b)(6) notice. Topic 30 seeks information regarding the marketing or publicizing of the Patents-in-Suit. Statements Teles made regarding the scope and applicability of its patents through marketing and publicizing efforts, e.g. in an offering document or a press release, are relevant. Topic 40 seeks information regarding the valuation of the Patents-in-Suit. Testimony on the valuation of the patents-in-suit is relevant to commercial success, and also bears on invalidity, patentability, scope of the claimed invention, and potential infringement analysis which would be included in any valuation analysis. Topic 60 seeks information regarding the financial interest of any person or entity in the outcome of this case. Dr. Schindler is the sole shareholder of SSB, which acquired ownership of the Patent-in-Suit a few months ago. Cisco anticipates asking Teles about the financial interest of Dr. Schindler and others in the outcome of this litigation, a proper subject for testimony.

---

[3]     Teles further informed Cisco that Mr. Gendner will only agree to be deposed for four hours, and has taken the position that he is an ex-employee it cannot control. Mr. Gendner has voluntarily submitted a declaration on behalf of Teles. If Teles intends to rely on Mr. Gendner's declaration, Cisco should have a fair opportunity to question Mr. Gendner concerning the facts there in. *See* 9/29 Tr., 7:21-8:13, 9:15-19.

The Honorable Leonard P. Stark
November 9, 2009
Page 4

                                              Respectfully,

                                              Rodger D. Smith II (#3778)

cc:    Steven J. Balick, Esquire (Via E-Filing and Electronic Mail)
       David W. Long, Esquire (Via Electronic Mail)
       Lana S. Shiferman, Esquire (Via Electronic Mail)

3223682